UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ROSE MARIE COLLIER,

                                    Plaintiff,                           19-CV-00368 (SN)

                    -against-                                            OPINION & ORDER

NANCY A. BERRYHILL, COMMISSIONER
OF SOCIAL SECURITY,

                                    Defendant.
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 7/6/2020

SARAH NETBURN, United States Magistrate Judge.

        Plaintiff Rose Marie Collier ("Plaintiff" or "Collier") brings this action pursuant to

Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks judicial

review of the final determination of the Commissioner of Social Security (the "Commissioner")

denying her application for Social Security Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). Collier moves for judgment on the pleadings to reverse

or vacate the Commissioner's determination under Federal Rule of Civil Procedure 12(c), and

the Commissioner cross-moves to uphold the findings of the Administrative Law Judge ("ALJ").

Because the ALJ's determination is free of legal error and supported by substantial evidence, the

Commissioner's motion for judgment on the pleadings is GRANTED and Collier's motion is

DENIED.

## BACKGROUND

        Collier filed applications for DIB and SSI on April 1, 2015, alleging disability as of

December 2010 due to major depressive episodes, bipolar disorder, posttraumatic stress disorder

("PTSD"), cocaine and marijuana use in remission, and tobacco use. Administrative Record

("Tr.") 17, 81, 82, 150-65, 177. After her applications were denied, Collier requested a hearing. Id. at 17, 83-97. A video hearing was held before ALJ Pope on July 13, 2017. Id. at 32-66. The ALJ issued a decision denying Collier's claims. Id. at 17-31. Collier appealed the ALJ's decision and in November 2018, the Appeals Council denied the appeal. Id. at 1-8. Accordingly, the ALJ's decision is the Commissioner's final decision. See 20 C.F.R. §§ 404.981, 416.1481, 42 U.S.C. § 405(g). Collier filed this case challenging the Commissioner's denial of her applications for DIB and SSI.

## I.      Summary of Non-Medical Evidence

Collier completed an adult function report dated June 10, 2015, in which she stated that she cannot be around large crowds because she gets anxious, paranoid, and sometimes very angry. Id. at 186. She explained that she was unable to work because her mind wanders and she is consumed with depression and anxiety. Id. Collier also wrote that she took care of her two daughters, her father, two cats, and two dogs. Id. She stated that she bathed and dressed herself, cleaned, did laundry, and prepared meals daily but was sometimes too depressed to cook or do chores. Id. at 186-88.

During the administrative hearing, Collier testified that she was 47 years old and lived with her daughters (aged 16 and 22) and her father. She went to school until eighth grade and later obtained her GED. She also attended one year of college. Id. at 32-66. She last worked as a security officer and stopped working in 2010 when both of her parents fell ill. Id. at 40. She explained that she had to leave her job because she could not focus on work. Id. She had also previously worked in several customer service positions and as a nursing assistant. Id. at 41.

Collier testified that she was able to bathe and dress herself, do laundry, sweep and do dishes, but that she was sometimes too depressed to do chores. Id. at 45, 54. She said that she did

not like being surrounded by crowds while taking public transportation and took a taxi provided by her insurance to travel to appointments. Id. at 52. She tried to go to the supermarket with her daughter once a month, at a time when there would not be too many people. Id. at 55. She occasionally babysat her niece's son, but only if he came to her home. Id. at 50.

Collier had no physical impairments but was diagnosed with major depression, bipolar disorder, PTSD, and anxiety. Id. at 41-42, 45-46. She experienced panic attacks that last from 15 minutes to an hour. Id. at 45-46. Collier testified that she was not able to focus or be around people and that she had flashbacks throughout the day and nightmares at night. Id. at 54-55. She stated that she had been prescribed Abilify, an antipsychotic medication, Lamotrigine, an anticonvulsant, Celexa, an antidepressant, and Ambien, a sedative, and that the medications help her. Id. at 42. Collier started treatment at the Institute for Family Health in August 2011 and was now seeing Licensed Clinical Social Worker ("LCSW") Sasha Thomson and Psychiatrist Dr. Elishka Caneva. Id. at 48-49. At the time of the hearing, Collier had seen Dr. Caneva for about six months. Id. at 47-48.

A vocational expert testified that Collier's past work included: baggage handler, airline reservationist, nurse's aide, and security guard. Id. at 59. The ALJ asked the VE to consider an individual aged 40-44, educated at the GED level, and certified as a nurse's aide, limited to simple, routine, and repetitive tasks, involving only occasional interaction with the public, coworkers, and supervisors. Id. at 59-60. The hypothetical also limited the person to simple work decisions, with an ability to maintain concentration for two hours at a time in an eight-hour day in an environment with no more than occasional changes in the work environment and without strict production pace rates. The VE testified that such a person could not perform Collier's past work. Id. at 60.

The VE testified that this person could perform light, unskilled work as a silverware wrapper, label marker, or routing clerk, or sedentary work as a document preparer, ticket checker, or addresser. Id. at 61. Even if the person could have no contact with coworkers or the general public, the VE stated that she could still perform the sedentary jobs. Id. at 63.

**II.    Summary of Medical Evidence**

    **A.  Medical Records**

The medical records included treatment notes from Collier's social worker and psychiatrists. The records since 2011 reflect a diagnosis of depression for which Collier was prescribed medication. A June 24, 2013 treatment plan from the Institute for Family Health noted that Collier was working with licensed mental health counselor Victor H. Franco to identify her stressors and triggers for her depression. Id. at 235-39. Her listed diagnoses included major depressive disorder (recurrent episode, moderate degree), PTSD, and cocaine and cannabis abuse in remission. Id. at 235. Treatment plans from August 2013 through May 2015 show that Collier reported persistent symptoms of depression and inconsistent compliance with medication and therapy attendance. See id. at 220-24, 224-29, 243-44, 246-249, 253-54, 257-58, 260-61, 311-19.

In May 2015, Collier saw psychiatrist Dr. Carli Kinghoffer, M.D., for a medication management follow-up appointment. Id. at 260. Collier reported that she was depressed most days but that her mood was improving. Id. Dr. Klinghoffer noted that Collier had a sad mood but was compliant with medication and had clear speech, an intact thought process, normal thought content, and no suicidal or homicidal ideations, hallucinations or delusions. Id. at 261. At October 2015, and August and March 2016 follow-up appointments with Dr. Klinghoffer, Collier said that her condition was stable or improving with her current medication. See id. at

4

273, 278 286. In February 2016, Collier saw Dr. Klinghoffer again and reported changes in appetite and fear of meeting people. Id. at 281.

Collier began treatment with Dr. Caneva in November 2016. See id. at 269-72. Dr. Caneva diagnosed Collier with PTSD, cannabis abuse in remission, cocaine abuse in remission, and bipolar II disorder. Id. at 269. Dr. Caneva observed that Collier's mood was depressed, but that her appearance, posture and motor activity were all within normal limits. Id. at 270. Dr. Caneva found normal thought content and intact thought processes, with no evidence of hallucinations, delusions, or suicidal/homicidal ideations. Id. She continued Collier's prescriptions for Lamictal, Celexa, and Ambien, and added Abilify. Id.

Collier was also treated by LCSW Sasha Thomson. Ms. Thomson's February 2017 treatment notes state that Collier continued to miss appointments because of anxiety about going outside to the point that it was difficult for her to leave her home more than once per month. Id. at 265. In a letter dated March 2, 2017, Thomson noted that Collier had been receiving regular mental health treatment since August 2011, but had not been able to work since 2010 because of severe and persistent anxiety, paranoia, flashbacks and a depressed mood. Id. 352-53. In a second letter dated March 23, 2017, Thomson opined that Collier's mental health conditions had prevented her from working for the past year and would continue to prevent her from working for the next 12 months. Id. at 354-55.

### B. Treating Physician's Opinion

Collier's treating psychiatrist, Dr. Caneva, submitted a psychiatric/psychological impairment questionnaire on April 10, 2017. Id. at 357-64. She reported that Collier had received regular mental health therapy since 2011 and been treated by Dr. Caneva since 2016. Id. at 362. Dr. Caneva noted that Collier had been diagnosed with bipolar II disorder, major depressive,

5

moderate, PTSD, tobacco use, cannabis abuse in remission, cocaine abuse in remission, and obesity. Id. Collier had a Global Assessment of Functioning ("GAF") score of 38, and her highest GAF score in the past year was 41, which indicates serious symptoms in social, occupational or school functioning.[1] Id. at 362-63. Dr. Caneva also reported that Collier suffers from: poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia, paranoia or inappropriate suspiciousness, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal, isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, hostility and irritability. Id. As a result of these impairments or treatment for them, Dr. Caneva opined that Collier would be absent from work more than three times per week. Id. at 364. Dr. Caneva noted that Collier has difficulty leaving her home for her weekly appointments. Id. at 363-64. Dr. Caneva also wrote that Collier's anxiety about going outside resulted in not seeking urgent medical care on several occasions. Id.

According to Dr. Caneva, Collier has either an extreme loss or a marked loss in her ability to, among other things, understand and remember detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, deal with the stress of semi-skilled and skilled work, and perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 359-61. Collier would also have moderate restrictions in activities of daily living,

---

[1] The GAF scale ranges from ten to 100, with a higher score indicating greater functioning. A GAF of 31 to 40 indicates major impairment in several areas such as work or school, family relations, judgment thinking or mood. A GAF of 41to 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. See Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

extreme difficulties in maintaining social functioning and constant deficiencies of concentration persistence or pace resulting in a failure to complete tasks in a timely manner. Id. at 358-61. Dr. Caneva reported that Collier's conditions persisted since at least September 26, 2014. Id. at 364.

### C.  State Agency Examiner's Findings

On June 24, 2015, psychiatric consultant Dr. S. Juriga submitted a Medical Determinable Impairment and Severity Form, opining that Collier's mental impairments were non-severe. Id. at 67-80. Dr. Juriga reviewed treatment notes from Dr. Klinghoffer and Ms. Thomson. Id. at 69. Dr. Juriga concluded that Collier's impairments did not cause any limitation in her ability to perform activities of daily living or to maintain social functioning, and only caused minor difficulties in maintaining concentration, persistence, or pace. Id. at 77-78.

### APPLICABLE LAW

## I.    Standard of Review

A motion for judgment on the pleadings under Rule 12(c) should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995). In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's determination may be set aside only if "it is based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

7

conclusion.'" <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. <u>Diaz v. Shalala</u>, 59 F.3d 307, 312 (2d Cir. 1995); <u>accord</u> <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002).

## II.     Definition of Disability

A claimant is disabled under the Act if she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." <u>Id.</u> §§ 423(d)(3), 1382c(a)(3)(D). A claimant will be determined to be disabled only if the "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>Id.</u> §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential evaluation process for making disability determinations. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation

process, the evaluation will not progress to the next step. The Court of Appeals has described the

process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity [("RFC")] to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d

770, 774 (2d Cir. 1999)). "The claimant bears the burden of proof in the first four steps of the

sequential inquiry; the Commissioner bears the burden in the last." Selian v. Astrue, 708 F.3d

409, 418 (2d Cir. 2013).

III.    **The ALJ's Determination**

The ALJ first found that Collier last met the insured status requirements of the Social

Security Act on September 30, 2015. Tr. 19. At step one, the ALJ found that Collier had not

engaged in substantial gainful activity since December 1, 2010. Id. At step two, the ALJ

concluded that Collier had severe impairments of depression, bipolar disorder, anxiety,

and PTSD. Id. at 20. At step three, the ALJ found that these impairments did not meet or

medically equal one of the listed impairments set forth in Appendix 1 of C.F.R. Part 404, Subpart

P. Id. at 20-22. The ALJ found that Collier had mild limitations in her ability to understand,

remember and apply information; and she had moderate limitations in her ability to interact with

others, in her concentration, persistence and pace, and in her ability to adapt and manage her

personal needs. Id. at 21. The ALJ then determined that Collier retained the RFC to perform a

range of work at all exertional levels, provided that she was limited to simple, routine, and repetitive tasks involving only occasional interaction with the public, co-workers, and supervisors. Id. at 22. The ALJ limited Plaintiff's RFC to simple work decisions with no more than occasional changes in the work environment and without a strict production pace rate. Id. Collier would also only be able to maintain attention and concentration for two hours at a time in an eight-hour workday. Id. at 22-26. At step four, the ALJ found that Collier was not able to perform her past relevant work. Id. at 26. At step five, the ALJ relied on the vocational expert's testimony to conclude that Collier was able to perform work existing in significant numbers in the national economy, including as a silverware wrapper, label marker, and routing clerk. Id. at 27. The ALJ therefore found that Collier was not disabled under the Act. Id. at 27-28.

## DISCUSSION

## I.  The ALJ Did Not Err in According Dr. Caneva's Opinion "Little Weight"

Collier's first argument in support of remand is that the ALJ erred by not assigning controlling weight to the opinion of Dr. Caneva, her treating psychiatrist.

### A.  The Treating Physician Rule

An ALJ must afford a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The rule recognizes that treating physicians are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id.

If an ALJ refuses to give a treating physician's opinion controlling weight, he must "consider various 'factors' to determine how much weight to give to the opinion." Halloran, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion." Id. See also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (listing the factors).

**B.   Dr. Caneva's Opinion**

The ALJ accorded Dr. Caneva's opinion "little weight." Tr. 25. Explaining his decision, the ALJ noted that Collier had seen Dr. Caneva for psychiatric treatment only three times in the last six months before the hearing and that one of those evaluations was only 20 minutes long. Id. at 24-25. The ALJ also concluded that the significant limitations described in Dr. Caneva's opinion—extreme difficulty maintaining social functioning, marked restriction in activities of daily living, and extreme loss of ability to maintain an ordinary routine without supervision— were inconsistent with both Collier's statements of her daily activities, such as caring for a family member, and medical records that showed normal mental status examinations. Id. at 23-25, 358-61.

Collier argues that, contrary to the ALJ's finding, Dr. Caneva's opinion was consistent with the medical evidence in the record, including reports to other healthcare providers that Collier was depressed and afraid to leave her house. But as the ALJ pointed out, Dr. Caneva's own treatment notes stated that Collier displayed average eye contact, clear speech, normal activity, cooperative attitude, and intact thought process, insight and judgment. Id. at 24. Dr.

Caneva's notes also stated that though Collier appeared to be depressed, she had an appropriate affect, no perception impairment, hallucinations, delusions, or suicidal or homicidal ideations. Id. In addition, Dr. Caneva's notes indicated that Collier was responding well to medication. Id.

Though he did not recite each factor listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2), the ALJ's assessment was supported by substantial evidence, and he provided good reasons for declining to treat Dr. Caneva's opinion as controlling. See Salati v. Saul, 415 F. Supp. 3d 433, 447 (S.D.N.Y. 2019) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013)) ("'[A] slavish recitation of each and every [factor]' is unnecessary 'where the ALJ's reasoning and adherence to the regulation are clear.'"). Accordingly, the ALJ's decision to afford Dr. Caneva's opinion "little weight" was not a legal error. See Jones v. Berryhill, 415 F. Supp. 3d 401, 414-15 (S.D.N.Y. 2019) (the ultimate conclusion of whether a claimant is unable to work is reserved to the Commissioner). In any case, despite the little weight afforded Dr. Caneva's opinion that Collier could not work, the ALJ still included non-exertional limitations in the RFC assessment "to adequately account for ongoing mental health symptoms." Tr. 25.

## IV.   The ALJ's Decision Was Supported by the Medical Record

Collier also argues that the ALJ erred in "not relying on any expert opinion" in coming to his conclusion that Collier was not disabled. She argues that, to the extent that the ALJ felt the medical evidence was insufficient to determine disability, he should have supplemented the record.

The ALJ's conclusions were properly supported. First, Collier's assertion that the ALJ relied on no expert opinion is inaccurate. The ALJ accorded "some weight" to the opinion of the State Agency expert Dr. Juriga and, as noted above, accorded "little weight" to Dr. Caneva's opinion. Id. In one important way, the ALJ's discounting Dr. Juriga's opinion counted in

Collier's favor. The ALJ accorded Dr. Juriga's opinion "some weight," but because Dr. Juriga had not considered the medical records since 2015, the ALJ did not adopt his conclusion that Collier's impairments were non-severe. Id. Second, the record here is lengthy and the ALJ relied upon the objective medical evidence throughout his decision. In addition to Dr. Caneva and Dr. Juriga's opinions, the ALJ also relied on unsigned treatment notes from the Family Health Center, Tr. 23-24, Dr. Klinghoffer's treatment notes, id. at 23-24, and LCSW Thomson's notes in making his decision. Id. at 25.

This case is not like Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998), a case on which Collier relies, in which the ALJ "arbitrarily substitute[d] his own judgment for a competent medical opinion." In that case, the ALJ concluded, without citing to any medical opinion, that "there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort [] as one would expect . . . based on the claimant's allegation of constant and totally disabling pain." Id. (internal quotation marks omitted). Here, to the contrary, the ALJ did not disregard the medical evidence in the record to come to his own conclusions about the presence or absence of particular medical conditions. Instead, he relied on the objective medical evidence and, to a lesser extent Dr. Juriga's opinion, to assess Collier's RFC and to determine that she was not disabled. See 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

**V.       The ALJ Discharged His Duty to Develop the Record**

Moreover, the ALJ discharged his duty to develop the medical record. A claimant bears the burden to prove that she is disabled through step four of the inquiry. See 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to [the Commissioner] that you are blind or disabled."); Schauer v. Schweiker, 675 F.2d 55, 59 (2d Cir. 1982). But because of the non-adversarial nature of Social Security proceedings, an ALJ has an affirmative obligation to develop the medical record before making a determination. See Craig v. Commissioner of Social Security, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016). Under the regulations, the Commissioner must make "every reasonable effort" to help the claimant obtain medical evidence even if the claimant is represented by counsel. 20 C.F.R. §§ 404.1512(b)(1), 416.912(b). "Every reasonable effort" means that the ALJ must make an initial request for evidence from the claimant's medical source and one follow-up request if the evidence is not received. 20 C.F.R. §§ 404.1512(a)(1)(i), 416.912(b)(1). Where the ALJ fails to properly develop the record, remand is appropriate. See Moran v. Astrue, 569 F.3d 108, 114-15 (2d Cir. 2009).

Collier argues that the ALJ should have further developed the record by contacting Dr. Caneva to clarify her assessment, requesting that Plaintiff appear for a psychiatric consultative examination or having a psychiatric expert testify at the hearing. But Collier has not identified any gaps or ambiguities in the record that would suggest that her medical history was incomplete. See Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996) (affirming where ALJ had "before him a complete medical history, and the evidence received from the treating physicians was adequate for him to make a determination as to disability."). First, the record already contained sufficient medical evidence from Collier's treating sources: The Family Health Center, Drs. Klinghoffer and Caneva, and LCSW Thomson. Accordingly, the ALJ was not required to

14

seek a consultative exam or testimony from an expert. See id.; 20 C.F.R. §§ 404.1517, 416.917

(the Commissioner "may" request a consultative examination "if your medical sources cannot or

will not give . . . sufficient medical evidence about your impairment for [the Commissioner] to

determine whether you are disabled or blind.").

Second, the fact that the ALJ did not contact Dr. Caneva to clarify her report was not a

failure to develop the record. See Perez, 77 F.3d at 48 (ALJ was not required to seek additional

information from treating physician where "there was nothing presented at the hearing to

indicate that [the additional evidence] would have revealed any useful information"). Indeed, the

ALJ accorded "little weight" to Dr. Caneva's opinion not because it was unclear but because it

was inconsistent with the rest of the evidence of record and Collier's hearing testimony. See Tr.

25. Because there were "no obvious gaps in the administrative record" and the ALJ "already

possess[ed] a complete medical history," he was under no obligation to seek additional evidence

before denying Collier's claim. Rosa, 168 F.3d at 79 n.5 (citing Perez, 77 F.3d at 48) (internal

quotation marks omitted). See also Evans v. Commissioner of Social Security, 110 F. Supp. 3d

518, 538 (S.D.N.Y. 2015) (the ALJ has a duty to further develop the record "only where the

record was incomplete") (internal citation and quotation marks omitted).

## VI.    The VE's Testimony

Finally, Collier argues that the ALJ should have found her disabled based on a combined

reading of Dr. Caneva's opinion and the VE's testimony. The VE testified that in the unskilled

market, a person could have only one to two unexcused absences per month to sustain

employment. Tr. 62. And Dr. Caneva opined that Collier would be absent more than three times

per month due to her impairments or treatment. Id. at 357-64 (stating both that Collier would be

absent more than three times per month and that she would be absent more than three times per

week). Collier argues that the ALJ improperly disregarded this evidence to conclude that she was not disabled.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence[.]" Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (citing Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983)). Collier's counsel asked the VE to consider a hypothetical person who would need to leave work early three days per month for "any number of reasons." Tr. 64. The VE testified that such a person would not be able to work. Id. The assumption on which that hypothetical was based—that Collier would be absent from work at least three times per month—relied on Dr. Caneva's opinion. As discussed above, the ALJ properly concluded that Dr. Caneva's opinion was inconsistent with the medical record and granted it little weight. Accordingly, it was also not error for the ALJ to set aside the VE's testimony in this context where the hypothetical did not "accurately reflect the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).

## CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted and Collier's motion for judgment on the pleadings is denied. The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 12 and 16.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   July 6, 2020
         New York, New York

16